UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TINA M. WAGONER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| COMPSOURCE OKLAHOMA, | ) |
| | ) |
| Intervenor Plaintiff, | ) |
| | ) |
| | ) |
| v. | )    Case No. 13-CV-352-TCK-PJC |
| | ) |
| HUSSEY SEATING COMPANY, a foreign | ) |
| corporation, | ) |
| MURRAY WOMBLE, INC., an Oklahoma | ) |
| corporation, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand (Doc. 19).

## I.    Background

On September 13, 2012, Plaintiff Tina Wagoner filed suit in Tulsa County District Court

against Defendants Hussey Seating Company ("Hussey") and Murray Womble, Inc. ("Murray

Womble") to recover for damages sustained in a workplace accident that occurred on January 10,

2011.  At the time of the accident, Plaintiff was operating retractable or telescoping bleachers in the

Union Public Schools Multipurpose Activity Center ("UMAC").  The bleachers were allegedly

"manufactured by Defendant Hussey and sold by Murray Womble." (Compl. ¶¶ II, Ex. 1 to Notice

of Removal.)  With respect to causation and damages, Plaintiff alleged:

> That as a result of the defective and unreasonably dangerous design of the bleachers
> the Plaintiff suffered injuries which have prevented her from transacting her
> business, forced her to expend large sums of money to effect a cure to her injuries,
> which injuries are disfiguring, catastrophic, and debilitating in their nature.  That said

injuries have caused her to lose income and did impair her earning capacity.  That at the time of the injuries to this Plaintiff she was 43 years of age with a normal life expectancy of 39.4 years according to the United States Life Tables.

(*Id.* ¶¶ III-IV.)  Plaintiff sought in excess of $10,000 in actual damages and in excess of $10,000 in punitive damages against each Defendant.[1]

On February 19, 2013, CompSource Oklahoma ("CompSource"), an Oklahoma corporation, filed a Complaint in Intervention, alleging that (1) it was Union Public Schools' workers' compensation insurer at the time of Plaintiff's accident, and (2) as of February 19, 2003, it had paid medical and indemnity benefits to Plaintiff in excess of $75,000.  CompSource further alleged:

> That pursuant to 85 O.S. § 348 the Intervenor would show the Court that [Plaintiff] . . . has elected to take compensation under the Oklahoma Workers' Compensation Act and her cause of action is assigned to the Intervenor in the form of a subrogation interest which Intervenor asserts herein; that by virtue of said statutory authority, the Intervenor is entitled by way of subrogation rights to reimbursement from the defendant's [sic] herein for all sums paid and reserved as a result of its obligation to its insured . . . .  That the covered accident and resulting injury to Plaintiff herein was the result of the negligence of the defendant's [sic].

(Compl. in Intervention, Ex. 2 to Not. of Removal.)  CompSource sought a judgment in excess of $75,000 against both Defendants.  On May 13, 2013, the state court entered a scheduling order,

---

[1]  At the time Plaintiff filed her Petition, this pleading method violated Okla. Stat. tit. 12, § 2008(A)(2), which required a plaintiff to plead in excess of $75,000 or, if less than $75,000, to specify the amount sought.  This requirement was part of amendments made by the Comprehensive Lawsuit Reform Act of 2009 ("CLRA").  Murray Womble moved to dismiss based on this pleading defect, and Plaintiff argued that this law was unconstitutional.  On March 20, 2013, the motion to dismiss was denied without explanation.  On June 4, 2013, the Oklahoma Supreme Court held that the CLRA violated the Oklahoma Constitution's single-subject requirement and was void in its entirety.  *Douglas v. Cox. Retirement Props., Inc.*, 302 P.2d 789, 794 (Okla. 2013).

which set an October 1, 2013 discovery deadline and an October 15, 2013 dispositive motion deadline.[2]

On June 13, 2013, within the one-year time limit in 28 U.S.C. § 1446(c)(1), Hussey removed the action to this Court alleging that this Court had diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Hussey alleged that (1) Murray Womble was fraudulently joined and may be disregarded for purposes of diversity; and (2) Hussey first ascertained that all diversity requirements were met on or after May 14, 2013, such that their removal on June 13, 2013 was within the thirty-day time limit set forth in 28 U.S.C. § 1446(b)(3). Hussey attached evidence outside the pleadings and launched a factual attack on the Court's jurisdiction. In her motion to remand, Plaintiff argued that Murray Womble was properly joined and destroys diversity or, alternatively, that Hussey's removal was untimely under § 1446(b)(3). Hussey filed a response to the motion, which Murray Womble joined. Plaintiff failed to file a reply in support of the motion to remand.

## II. Diversity

It is not disputed that, if Murray Womble's citizenship is disregarded, the remaining parties are of diverse citizenship. Specifically, (1) Plaintiff is an Oklahoma citizen; (2) Intervenor CompSource, which the Court views as an Intervening Plaintiff, is an Oklahoma corporation;[3] and

---

[2] The parties have not moved for dissolution or modification of that scheduling order, and such deadlines remain in effect. *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); *Winstead v. Ga. Gulf Corp.*, 77 F. App'x 267, 270 (5th Cir. 2003) (deadline set by state court for motions to amend was never challenged and remained in full force and effect following removal).

[3] Plaintiff does not dispute that CompSource should be deemed an Intervening Plaintiff, as she did not refute or make any arguments regarding paragraphs 20-23 of the Notice of Removal. Because the Court views CompSource as an Intervening Plaintiff, there is no need to address "realignment" issues. *See generally Price v. Wolford*, 608 F.3d 698, 704-05 (10th Cir.

(3) Hussey is a Maine corporation.  It is also undisputed, at this juncture in the proceedings, that the

amount in controversy exceeds $75,000.  (*See* Ex. 9 to Resp. to Mot. to Remand, Ex. 9.)[4]  Therefore,

if Murray Womble was fraudulently joined, the requirements of 28 U.S.C. § 1332 are satisfied.

## A.    Fraudulent Joinder Standard

In order to successfully assert fraudulent joinder, the removing party bears the "heavy

burden" of showing either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of

the plaintiff to establish a cause of action against the non-diverse party in state court.  *Dutcher v.

Matheson*, --- F.3d ----, 2013 WL 4212362, at *5 (10th Cir. 2013) (citing *Cuevas v. BAC Home

Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)).  Hussey seeks to establish fraudulent

joinder by the second method.

Under the second method, the removing defendant must demonstrate that "there is no

possibility of recovery by the plaintiff against an in-state defendant, which stated differently means

that there is no reasonable basis for the district court to predict that the plaintiff might be able to

---

2010) (determining whether party that intervened as a defendant should be realigned as a
plaintiff and adopting "substantial conflict" test for realignment of parties).  Even if the Court
were to independently examine CompSource's status, there would be no need for realignment
because CompSource has an "actual and substantial conflict" with Defendants, as evidenced by
its Complaint in Intervention seeking damages against both Defendants.  *See Price*, 608 F.3d at
705 ("Under the substantial-conflict test, a party need not be realigned so long as it has an
'actual and substantial conflict' with a party on the other side.").  Further, there is no evidence
that Plaintiff and CompSource have had prior disputes or taken opposing positions in the
workers' compensation case.  *Cf. Belcher v. United Parcel Serv., Inc.*, No. 09-CV-628-TCK,
2009 WL 4912169, at *4 (N.D. Okla. Dec. 10, 2009) (declining to realign employer/workers'
compensation insurer where it and plaintiff had "taken opposing positions in the workers'
compensation case").

[4] Prior to removal, Murray Womble moved to compel a response to its request for
admission regarding the amount in controversy.  Following removal, Magistrate Judge Lane
Wilson granted the motion, and Plaintiff filed a supplemental response making this admission.

recover against an in-state defendant." *Cuevas*, 648 F.3d at 249; *Monsanto v. Allstate Indemnity*, No. 99-2225, 2000 WL 525592, at *1 (10th Cir. April 14, 2000) (explaining that removing parties typically must show that there is no possibility that the plaintiff would be able to establish a cause of action against the joined party).  In determining whether there is any possibility of recovery, courts may "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Smoot v. Chicago, R.I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967) (internal citations omitted).  It is well-settled that "all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, --- F.3d ----, 2013 WL 4212362, at *5; *Monsanto*, 2000 WL 525592, at *1 (explaining that courts typically resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party).  Where the removing party's argument turns on a factual issue, the Tenth Circuit has indicated that "the issue must be capable of summary determination and be proven with complete certainty" and that courts may not "pre-try . . . doubtful issues of fact to determine removability." *Smoot*, 378 F.2d at 882.[5]

Although it is clear that a removing party bears the heavy burden of proof, and that the Court must resolve any questions in a plaintiff's favor, it is less clear what type of evidence a plaintiff must submit in response to an attack on the accuracy of an alleged fact.  Plaintiff argues that it need only

---

[5] This Court and other courts within the Tenth Circuit have sometimes referred to the fraudulent joinder standard as requiring "clear and convincing evidence."  *See, e.g., Spence v. Flynt*, 647 F. Supp. 1266, 1271 (D. Wyo.1986) ("The removing party who claims fraudulent joinder has the burden of pleading such with particularity and supporting it with clear and convincing evidence; it must prove the non-liability of the defendant as a matter of fact or law."); *Castens v. Conseco Life Ins. Co.*, No. 11-CV-628-TCK, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012) ("With respect to the consideration of evidence, a removing defendant who pleads fraudulent joinder must support his claim with clear and convincing evidence."); *Mitchell v. Ford Motor Co.*, No. 05–379, 2005 WL 1657069, at *3 (W.D. Okla. July 5, 2005) (same).  The Court finds little difference between the "complete certainty" language in *Smoot* and the "clear and convincing" language in other cases.

present the results of its pre-suit investigation and demonstrate that it had a good-faith basis for including the non-diverse party at the outset of the litigation. There is at least some support for Plaintiff's position. *See Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F. Supp. 1399, 1405 (D. Colo. 1989) ("We are of the view that plaintiff can defeat removal and controvert defendants' factual submissions merely by presenting the results of its pre-filing investigation of the claims alleged."). Hussey argues that *Smoot* requires a plaintiff to come forward with proof supporting an alleged fact (and not just proof of pre-filing good faith), where a removing defendant mounts an evidentiary attack on the accuracy of such fact. *See Smoot*, 378 F.2d at 880-82.

The Court concludes that *Smoot* is procedurally and factually similar to this case and requires Plaintiff to do more than produce evidence of its pre-suit investigation. In *Smoot*, the removing defendants argued that a railroad employee accused of negligence was fraudulently joined. Upon removal, the removing defendant submitted an affidavit showing that the non-diverse employee had terminated his employment with the defendant railroad fifteen months before the collision and could not be connected with the alleged negligence. *See id.* at 880. The plaintiff filed a motion to remand, arguing that she "had in good faith alleged a cause of action against" the employee. *Id.* The plaintiff failed to deny either the allegations of the removal petition or the affidavit. *Id.* The court did not analyze the question of good faith but instead upheld denial of the motion to remand because the defendants established "[t]he non-liability of [the non-diverse defendant] . . . with complete certainty upon undisputed evidence." *Id.* at 882. A good-faith filing effort could not save the plaintiff where evidence of non-liability was wholly undisputed, and the "continued joinder [of the non-diverse defendant] serve[d] only to frustrate federal jurisdiction." *Id. Smoot* indicates that Plaintiff must produce *some* evidence showing there remains a possibility of recovery against Murray Womble,

despite Murray Womble's denial that it sold the bleachers in question.  The quantum of evidence is low, all disputes must be resolved in Plaintiff's favor, and Hussey retains the heavy burden of proof.  But Plaintiff is incorrect that she need only demonstrate good-faith filing efforts in order to prevent removal; instead, *Smoot* indicates that she must create some dispute regarding the challenged jurisdictional fact.  *See also Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) ("When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint.").

### B.    Fraudulent Joinder Analysis

Hussey submitted the following evidence in support of its assertion that Plaintiff has no possibility of recovery against Murray Womble.  Jeff Naber ("Naber"), Vice-President of Murray Womble, submitted an affidavit ("Naber Affidavit") stating:

> Murray Womble has distributed Hussey products.  However, Murray Womble has determined that *it did not sell or install* the bleachers at issue in this case, at [UMAC].  Based on documentation provided by Defendant Hussey, the bleachers at issue were distributed by Defendant Hussey and installed by Specialty Supply & Installation Co. of Conroe, Texas. Murray Womble has reviewed its books and records maintained in the ordinary course of business and has found that *it did not manufacture, sell, install, distribute or design* the bleachers at issue in this case.

(Naber Aff. ¶¶ 4-6, Ex. 6 to Notice of Removal (emphasis added).)  Thus, Naber (1) denies that Murray Womble sold the bleachers to Union Public Schools, as alleged in the Petition, and (2) asserts that Hussey was the seller.  Consistent with the Naber Affidavit, Hussey argued in its brief that "Hussey actually sold the bleachers in this case."  (*See* Resp. to Mot. to Remand 1.)[6]

---

[6]  For unknown reasons, Hussey did not offer an affidavit from one of its own employees identifying Hussey as the seller.  Nor did it offer a purchase order, bill of sale, invoice, or other business record identifying Hussey as the seller.  Nonetheless, the Naber Affidavit is sufficient to

Hussey also submitted a letter dated April 19, 2013 from Hussey's counsel to Plaintiff's counsel ("4/19/03 Correspondence") stating: "[A]ttached please find documents that we recently located which identify the Installer as Specialty Supply & Installation Company, from Conroe, Texas." (4/19/03 Letter, Ex. 3 to Notice of Removal.)  The referenced documents reflect: (1) an offer from Specialty Supply & Installation Company ("SSI") to Hussey to install 2,698 seats for the price of $107,924, dated October 6, 2003; (2) an acceptance by Hussey with the exception of $5,400, also dated October 6, 2003; and (3) an invoice from SSI to Hussey dated October 23, 2003.  (*Id.*) Hussey submitted its Second Supplemental Response to Plaintiff's First Discovery Requests ("Supplemental Responses"), wherein Hussey produced the 4/19/03 Correspondence and admitted that SSI installed the bleachers.[7]

In response to this evidence, Plaintiff submitted the unsworn Statement of Cord Adams ("Adams"), who was hired by Plaintiff's counsel to conduct a pre-suit investigation.  In relevant part, Adams stated:

> I went out and met with [Plaintiff's] boss, Steve Bardin (the building supervisor), Dawn Meadows (formerly the school principal and then grounds superintendent), and Dave Stauffer (former principal and then facilities superintendent), and viewed the bleachers. . . . The people identified above were there when the 2003 bleachers were installed and explained that Murray Womble's agent, Jimmy Dresler, had been present when those bleachers were installed and had trained them on how to operate them.  The school personnel indicated to me that the bleachers had come from

---

satisfy Hussey's burden for purposes of removal.

[7] The 4/19/03 Correspondence and Supplemental Responses are of little evidentiary value because they simply show that Murray Womble did not *install* the bleachers.  The challenged allegation is that Murray Womble *sold* the bleachers, and it is unclear how the 4/19/03 Correspondence and Supplemental Responses challenge this allegation.  If it is industry practice for a seller to contract for installation, this could perhaps support a finding that Hussey was the seller.  However, this was not explained to the Court.  Thus, the Court finds the Naber Affidavit to be the crucial evidence submitted by Hussey.

Murray Womble and they were apparently unaware that some different dealer or distributor may have been involved.

(Adams Statement, Ex. 2 to Pl.'s Mot. to Remand.)  Plaintiff also attempts to cast doubt on Naber's credibility by arguing that (1) Murray Womble has not produced the business records supporting Naber's statements; (2) Naber does not deny that Murray Womble was "involved" in the sale, was present during the installation process, or somehow received compensation from the sale; and (3) it took Hussey until April 2013 to conclude that it, and not Murray Womble, sold the bleachers.  (*See* Pl.'s Mot. to Remand 6 & n.1)  Plaintiff also argues that "[f]urther discovery is necessary to explain why the Murray Womble affidavit seems to contradict what the Union Public School officials understood per the Adams' affidavit."  (*Id.* n.1.)  Plaintiff has not submitted any affidavits or deposition testimony of the school officials who allegedly believed they were dealing with Murray Womble or its agent.

The Court concludes that Defendants have met their burden of proving that there is no possibility of recovery against Murray Womble.  The crucial piece of evidence is the Naber Affidavit, wherein Naber denies that Murray Womble played any role in any transactions leading to installation of the allegedly defective bleachers at UMAC.  Plaintiff's only counter-evidence is the unsworn Adams Statement.[8]  The only averments therein that could cast doubt upon the Naber Affidavit are Adams' statements regarding what the school officials told him.  However, such statements by Adams are inadmissible hearsay under Federal Rule of Evidence 801 because they are being offered to prove the truth of the matters asserted – namely, that the three identified Union

---

[8]   Although unsworn, this statement may be considered by the Court pursuant to 28 U.S.C. § 1746.  *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 570 n.1 (10th Cir. 1994) (recognizing that "an unsworn statement made in compliance with [28 U.S.C. § 1746] may be submitted in lieu of affidavits").

Public Schools officials believed Murray Womble was somehow involved in the transaction.[9]  This hearsay evidence is inadmissible and cannot be used to counter the Naber Affidavit.  *See Connally v. State Farm Fire & Cas. Co.*, No. CA-12-64, 2012 WL 2155110, at *10 (S.D. Ala. May 22, 2012) (explaining that inadmissible hearsay "cannot be considered in resolving a claim of fraudulent joinder; and that the affiant must be competent to testify on the matters stated and that all matters must be statements of fact based on personal knowledge"); *Bloodsworth v. Smith & Nephew*, No. 2:05CV622-D, 2005 WL 3470337, at *9 (M.D. Ala. Dec. 19, 2005) ("The court cannot consider hearsay in ruling on the fraudulent joinder issue.").  Without the hearsay statements, the Adams Statement does nothing to counter the Naber Affidavit, and the remaining record consists of an undisputed denial of involvement in the relevant transaction.

Further, even assuming the Court considers the hearsay, Adams indicates that the school officials believed Murray Womble was involved but were "apparently unaware that some different dealer or distributor may have been involved." (Ex. 2 to Pl.'s Mot. to Remand.)  Even Adams seems to admit that the school officials were misinformed, despite their good-faith belief that Murray Womble sold the bleachers.  As explained above, a good-faith belief in the veracity of a claim is not sufficient to counter Hussey's evidence.  Thus, Murray Womble's non-liability has been established with complete certainty upon undisputed evidence, and its Oklahoma citizenship may be disregarded for purpose of the Court's diversity analysis.  *See Smoot*, 378 F.2d at 882 (affirming finding of fraudulent joinder where non-liability of non-diverse party was "established with complete certainty upon undisputed evidence"); *Legg*, 428 F.3d at 1322-23 (reversing grant of motion to remand where

---

[9]  Plaintiff failed to file a reply brief and failed to identify any exception to the hearsay rule raised by Hussey, and the Court has not identified any exception that applies to these statements.

the plaintiffs failed to dispute a sworn statement that non-diverse defendant never promoted or sold the relevant drug) ("With no response from the Plaintiffs, there was no question of fact for the court to resolve.").

The Court will briefly address Plaintiff's reference to "additional discovery" uncovering evidence that could be used to counter the Naber Affidavit.  At the time of Plaintiff's Motion to Remand on July 12, 2013, a scheduling order had been in place for two months setting a discovery deadline of October 15, 2013.  By the time of Plaintiff's reply deadline, discovery had been open for at least three months.  This is sufficient time for Plaintiff  to conduct depositions, obtain statements from the relevant school officials, or obtain business records.  More importantly, Plaintiff did not request any additional time for discovery or give this Court any indication that, with more time or more discovery, Plaintiff would be able to counter the Naber Affidavit. Instead, Plaintiff chose to rely on its pre-suit investigation efforts and failed to even file a reply brief addressing Hussey's arguments.  Under these circumstances, Plaintiff has had time, opportunity, and incentive to gather evidence in support of the motion to remand and has failed to do so.  *See TKI, Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307, 1315 (M.D. Ala. 2002) (rejecting similar argument where the plaintiffs had over a year since the original filing of the Complaint and failed to present any evidence countering a non-diverse defendant's assertion that it played no role in the alleged misconduct).

**III.     Timeliness of Notice of Removal**

A notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial

pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Hussey contends that the earliest possible "other paper" triggering the removal clock was Plaintiff's Responses to Requests for Production, dated May 14, 2003. Therein, Plaintiff responded to a request to produce "all documents setting forth the damages, losses, and expenses you contend you have incurred" as follows: "All expenses, medical and medical-related expenses which Tina Waggoner has incurred, have been paid by her workers' compensation carrier and the documentation thereof is not yet in the possession of this Plaintiff." (Ex. 9 to Not. of Removal.) According to Defendants, this response, combined with CompSource's Complaint in Intervention seeking in excess of $75,000 for medical bills paid on Plaintiff's behalf, was the first "paper" it received from Plaintiff that conclusively established the jurisdictional amount. Plaintiff argues that the triggering "other paper" was either (1) CompSource's Complaint in Intervention, filed February 19, 2003, because Plaintiff's and CompSource's claims must be aggregated for purposes of assessing the propriety of removal; or (2) Plaintiff's deposition, which occurred on April 18, 2003.

The Court concludes that the Notice of Removal was timely filed. First, the Court rejects Plaintiff's argument that the case became immediately removable upon CompSource's filing of the Complaint in Intervention. As a general principle, a case not originally removable may become removable under § 1446(b) only by virtue of a "voluntary act" of the plaintiff. *DeBry v. Transamerica Corp.*, 601 F.2d 480, 488 (10th Cir. 1979) ("The general effect of the [voluntary/involuntary] test is that a cause cannot be removed where the removability is a result of

12

some development other than a voluntary act of plaintiff."); *Lauf v. Nelson* , 246 F. Supp. 307, 311 (D. Mont. 1965) ("'And as a general proposition third persons who intervene and voluntarily submit to the jurisdiction of the state court cannot create a removable action.'") (quoting 1A Moore, Federal Practice (2d ed. 1965) 0.167 (11) at 1054).  The Court need not decide whether CompSource's and Plaintiff's claims could ordinarily be aggregated for purposes of federal jurisdiction; the crucial question is whether Plaintiff engaged in a voluntary action that rendered the case removable and started the thirty-day removal clock.  Plaintiff did not do so, and Plaintiff would undoubtedly have opposed any removal based solely on CompSource's pleadings.

Second, the Court rejects Plaintiff's argument that her deposition on April 18, 2003 triggered the removal clock.  In her motion to remand, Plaintiff recounts portions of her deposition that allegedly should have made clear to Defendants that she sought in excess of $75,000.  (*See* Mot. to Remand 9-11 (detailing, for example, Plaintiff's extensive injuries, hourly rate of pay and request for lost wages, need for caregiver, and need for special equipment).)  In the same deposition, however, Plaintiff stated that she did not know how much money she sought and did not have any particular number in mind.  (Pl.'s Dep., Ex. 8 to Resp. to Mot. to Remand, at 170.)  Plaintiff also did not specify an amount of time for which she sought lost wages and stated she did not know if she would be released for some type of work, (*see id.* at 66, 70), rendering any precise lost wages calculation difficult for Defendants to complete.  And even after this deposition, in Plaintiff's Responses to Defendant Murray Womble's First Requests for Admission dated April 23, 2013, Plaintiff refused to admit that she sought an amount in excess of $75,000.  (Ex. 7 to Not. of Removal.)  Therefore, Plaintiff's deposition on April 18, 2003, did not constitute an "other paper" that triggered the removal clock.

Based on the serious and extensive nature of Plaintiff's accident, which resulted in paralysis, confinement to a wheelchair, and significant ongoing medical care, it seems obvious that she seeks in excess of $75,000. But Plaintiff refused to plead that amount, refused to admit that amount in discovery, and prior to May 14, 2003, had not provided any "other paper" allowing Defendants to satisfy their burden of establishing that amount upon removal. Under these circumstances, Plaintiff's argument that Hussey was somehow dilatory in its removal effort is wholly unpersuasive.

## IV.  Conclusion

Plaintiff's Motion to Remand (Doc. 19) is DENIED. Defendant Murray Womble, Inc. was fraudulently joined and is DISMISSED from the case without prejudice.[10] The parties are ordered to file a Joint Status Report setting forth proposed deadlines for the remainder of the case.[11]

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**

---

[10] The Court must dismiss fraudulently joined parties without prejudice because it lacks jurisdiction over them. *See Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004).

[11] As explained *supra* note 2, the deadlines in the May 13, 2013 scheduling order remain in effect upon removal. Thus, the Court currently intends to enter a schedule for only those deadlines that have not passed.